UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN S. SCHWEDER,<br><br>Defendant. | No. 2:11-cr-00449-KJM<br><br><br><br>ORDER |

      Defendant, through counsel, moves for an order granting him compassionate release under 18 U.S.C. § 3582(c). Defendant makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and to him in particular. Mot., ECF No. 696. For the following reasons, the court DENIES defendant's motion without prejudice.

I.    BACKGROUND

      On October 3, 2011, law enforcement officers arrested defendant Brian Schweder at a rural property in Trinity County, California in connection with a suspected marijuana grow; on October 6, 2011, the U.S. Attorney filed a criminal complaint against him. Compl., ECF No. 1. On December 9, 2015, Schweder pled guilty to conspiracy to manufacture at least 100 marijuana plants in violation of 21 U.S.C. §§ 846 and 841(a)(1) and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Change of Plea Hrg. Mins., ECF No. 468. He

1

was sentenced to a term of 162 months of imprisonment and 60 months of supervised release for the conspiracy charge and 120 months of imprisonment and 36 months of supervised release on the felon in possession of a firearm charge, to be served concurrently. Judgment & Commitment, ECF No. 565. As of the filing of the motion, defendant had served nearly two thirds of his sentence, approximately 104 months. Mot. at 1.

Defendant is now housed at USP Lompoc. *Id.* USP Lompoc is part of a larger complex with FCI Lompoc, a minimum-security federal prison camp. The Bureau of Prisons ("BOP") reports there are currently 3 inmates and 2 staff that are positive for COVID-19, 163 inmates have "recovered," and 2 inmates have died at USP Lompoc. *See* BOP, *COVID-19 Cases* (updated daily).[1] The number of active cases was significantly higher when defendant filed his motion, with defendant citing 792 active cases as of May 9, 2020. Mot. at 14-15 (citing Richard Winton, *70% of Inmates Test Positive For Coronavirus at Federal Prison in Southern California*, Los Angeles Times, May 9, 2020.[2]). While numbers have fallen at the prison, they have risen significantly in surrounding Santa Barbara County. *Tracking the Coronavirus in Santa Barbara County*, Los Angeles Times, Sept 2, 2020.[3]

Defendant avers he deposited a letter to the warden of USP Lompoc in the inter-prison mail system on March 23, 2020, requesting compassionate release under 18 U.S.C. § 3582. Schweder Decl. ¶ 3, ECF No. 696-2. Through counsel, he filed a motion for compassionate release on May 18, 2020. Mot. The government opposed. Opp'n, ECF No. 698. Defendant replied. Reply, ECF No. 701. The court ordered supplemental briefing to clarify the record. Supp. Br., Order, ECF No. 704. Defendant filed supplemental briefing, Def. Supp. Br., ECF No. 710, as did the government, Gov. Supp. Br., ECF No. 715.

/////

---

[1] https://www.bop.gov/coronavirus/ (last accessed September 2, 2020).

[2] https://www.pressdemocrat.com/article/news/70-of-inmates-test-positive-for-coronavirus-at-federal-prison-in-southern/?sba=AAS.%E2%80%9C

[3] https://www.latimes.com/projects/california-coronavirus-cases-tracking-outbreak/santa-barbara-county/

Defendant claims he is particularly vulnerable to the spread of coronavirus due to his underlying health conditions: hypertension, hyperlipidemia and hepatitis C. Mot. at 13, *citing* Ex. 2, ("BOP Med. Records"), ECF No. 696–4. Defendant argues his physical vulnerability, combined with conditions at the prison, constitute an extraordinary and compelling reason to reduce his sentence and release him.

Defendant asserts he has been placed in a 4 foot by 9 foot cell with a cellmate. Def. Supp. Br. at 2. The government confirms defendant is housed with a cellmate. Gov. Supp. Br. at 2. Although defendant remains in his cell, his cellmate works in the prison kitchen in close contact with other workers. Anton Decl. ¶ 18, ECF No. 710–1.[4] He is occasionally given showers in close quarters with other inmates, when lockdowns are in a less severe phase. *Id.* ¶ 21 (describing need to turn sideways to pass other inmates in narrow hallways when showers are allowed in "Phase 2 Lockdown.").

Suzanne Scott, a camp administrator at the Lompoc complex, swears to a complex phased system of lockdowns at USP Lompoc to manage the spread of COVID-19, which minimizes the circulation of inmates in the complex. *See generally* Scott Decl., ECF No. 715–1. The prison provides disinfectant and masks to inmates. *Id.* ¶ 27. Scott describes the addition of new facility space on May 4, 2020, such as the Hospital Care Unit, including 10 double occupancy acute care treatment rooms, *id.* ¶ 31, and "the anticipated arrival of a 100 square foot tent to further enhance social distancing opportunities," *id.* ¶ 33.

Defendant proposes that he be released into the custody of his long-time girlfriend, Deborah Stuart. Mot. at 20–21. She offers her home in rural Valley Springs, California as the location for defendant's home detention. *Id.*; Stuart Decl. ¶ 5, ECF No. 696-6.

---

[4] Defendant's counsel recounts his conversations with defendant, rather than defendant's swearing to these facts himself because of difficulties in arranging communication with individuals housed at the prison. *See* Anton Decl. ¶ 8 ("I am aware that it would be preferable for evidentiary reasons for the defendant himself to be the declarant, however, due to the physical limitations of the prison lockdown, the pleading schedule . . . does not allow time for execution of a declaration by defendant."). Although these statements are hearsay outside any exception, the court finds the Federal Rules of Evidence do not apply here under Federal Rule of Evidence 1101(d)(3) (rules do not apply in miscellaneous proceedings such as sentencing or supervised release).

Defendant's plea agreement and sentence for conspiracy to manufacture marijuana was based in part on two prior convictions for felony violations of California Health & Safety Code section 11359, felony possession of marijuana for sale. Mot. at 2–3. Defendant asserts the state convictions for possession of marijuana for sale are now at most misdemeanors under state law, since California legalized adult use marijuana. *Id.* He successfully petitioned the sentencing courts in his prior offenses for reduction to misdemeanors. *Id.* If the court were weighing his past convictions for sentencing purposes today, he argues, the maximum sentence for the marijuana conspiracy offense would be 5 years rather than 13 and a half years. *Id.* The court addresses this claim in greater depth below.

## II.     LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A); 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody. 18 U.S.C. § 3582(c)(1)(A). Second, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(2).

4

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since passage in December 2018 of the First Step Act (FSA), which amended § 3582 to allow a defendant to file a motion for compassionate release directly with the court, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding. A number of district courts nationwide have determined that the policy statement provision "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because the statement has not been amended since the First Step Act passed to reflect that both defendants and the BOP may move for compassionate release. *See United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)). Many courts in this circuit have nonetheless "turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020). However, there is also a strong contingent of cases within the Ninth Circuit in which the presiding judge has concluded the guidelines are no

longer limiting, and the court has discretion to define what constitutes an "extraordinary and compelling" reason. *See, e.g.*, *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as guidance).

In resolving the instant motion, this court considers the Sentencing Commission's policy statement as guidance, but need not determine whether it is binding in this context. The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community." *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III. DISCUSSION

A. Exhaustion of Administrative Remedies

As noted, defendant avers he deposited a letter to the warden of USP Lompoc in the inter-prison mail system on March 23, 2020, requesting compassionate release under 18 U.S.C. § 3582. Schweder Decl. ¶ 3, ECF No. 696-2. The government disputes this, asserting without any support, "BOP does not have a record of a March 23, 2020 request." Opp'n at 3 (citing Schweder's own request for this proposition). The record supports the conclusion defendant did deposit his letter to the warden on March 23, 2020. Having received no response, defendant says he again sent a copy of his request on May 14, 2020, referencing the first request of March 23, 2020. Opp'n, Ex. 2 (Second Schweder Request), ECF No. 698-1.

/////

At least two other district courts have found that the "30-day period should be measured from the date on which a prisoner submits his or her request to the BOP, not the date the request is received by the Warden." *United States v. Feucht*, No. 11-CR-60025, 2020 WL 2781600, at *2 (S.D. Fla. May 28, 2020); *see also United States v. Resnick*, No. 14 CR 810 (CM), 2020 WL 1651508, at *6 (S.D.N.Y. Apr. 2, 2020) (finding same); *but see United States v. Kinley*, No. 1:16-CR-10018-003, 2020 WL 2744115, at *2 (W.D. Ark. Apr. 17, 2020) (finding exhaustion not met where defendant offered only her own declaration stating she sent request to warden, in part because defendant "provides no evidence of whether the warden received [her] request and made a decision on it"). This conclusion follows from the "prisoner mailbox rule," which clarifies an appeal is considered "filed" "on the date the *pro se* prisoner delivers the notice to prison authorities for mailing" rather than the date the recipient receives the filing. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *Feucht*, 2020 WL 2781600, at *2.

The court need not decide the issue of whether the motion was timely following defendant's March 23 letter to the warden; thirty days have elapsed since the defendant submitted his second request referencing the first. His motion is ripe for adjudication.

B. "Extraordinary and Compelling Reasons"

The court, as it has in similar cases where a defendant seeks compassionate release in light of the coronavirus, considers the suitability of the particular circumstances of defendant's confinement in protecting him from infection, considered in conjunction with the defendant's specific health risks.

Individuals in congregate living situations are vulnerable to coronavirus as the virus is highly contagious in closed environments. *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Center for Disease Control ("CDC"), July 22, 2020 (last accessed September 2, 2020).[5] Furthermore, the facilities at Lompoc have been noted nationally as one of the epicenters of coronavirus in the

---

[5] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

7

federal prison system during the spring and summer of 2020.  *A California Prison Has One of the Nation's Largest Clusters of Cases*, New York Times, May 10, 2020 (accessed September 2, 2020);[6] Willis Jacobson, *Inmate at Lompoc Prison Becomes Fourth at Facility to Die From COVID-19*, Lompoc Record, June 5, 2020 (accessed September 2, 2020);[7] Tyler Harden, *More Suffering and Death at Lompoc Prison Racked with COVID-19*, Santa Barbara Independent, May 29, 2020 (accessed September 2, 2020).[8]

Other district courts have found USP Lompoc to be suffering a particularly bad outbreak.  Earlier this year, another district court in the Ninth Circuit called FCI Lompoc "among the worst coronavirus hotspots in the nation."  *United States v. Robinson*, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *1 (N.D. Cal. April 27, 2020); *see also United States v. Kamaka*, CR. No. 18-00085 SOM, 2020 WL 2820139, at *3–4 (D. Haw. May 29, 2020) (noting possibility of staff rotating between USP Lompoc and FCI Lompoc as creating likelihood of infection).  More recently, this court has noted serious concerns about the government's methods for tabulating the numbers of inmates infected versus those recovered at Lompoc in granting compassionate release for a co-defendant in this case.  *See* Order Granting Brian Pickard Compassionate Release at 5-6, ECF No. 726 (noting the sudden movement of inmates from "active" to "recovered" category en masse).

Here, the government submitted the declaration of Suzanne Scott, who avers Schweder's movement is being restricted and that he has been given disinfectant and personal protective equipment ("PPE").  Scott Decl. ¶ 26.  However, many of the basic functions of the prison requiring the circulation of staff and inmates through the prison continue even in the most restrictive phase of operations.  *Id.* ¶ 31 (describing inmates' use of showers, phones and TRULINCS email system on a rotating basis).

---

[6] https://www.nytimes.com/2020/05/09/us/coronavirus-news-updates.html#link-2bf5b78

[7] https://lompocrecord.com/news/local/inmate-at-lompoc-prison-becomes-fourth-at-facility-to-die-from-covid-19/article_e2b03141-9b24-52a8-8c17-5d0edf1e588b.html

[8] https://www.independent.com/2020/05/29/more-suffering-and-death-at-lompoc-prison-wracked-with-covid-19/

Finally, defendant, through counsel, asserts he is regularly being exposed to other inmates. Defendant initially declared "[f]or the last approximately 90 days I have been in solitary confinement in a 4' x 9' cell usually used for punishment of severe disciplinary cases (even though I have a perfect disciplinary record). During this time my ability to communicate with family, friends and my lawyer has been restricted and I have not had the opportunity to shower or clean myself." Schweder Decl. ¶ 9. His attorney avers defendant later "stated that his previous estimate of being locked down for 90 straight days was inaccurate. He said the lockdowns have been haphazard, lasting weeks at a time, then he is periodically let out for one hour for a shower, then returned to his cell." Anton Decl. ¶ 16. Defendant asserts through counsel that as of June 17, 2020, he has a cellmate who works in the kitchen. *Id.* ¶¶ 17–18.

The inconsistencies in defendant's account of the conditions of his confinement may be explained by the implementation over time of the system of phased lockdowns described by Suzanne Scott. They do not preclude a finding that he cannot be adequately protected from the virus at USP Lompoc. There are consistent reports from multiple sources of an outbreak at the prison, combined with the practical difficulties of safeguarding any prisoner from an active outbreak in any congregate living environment. "Incarcerated/detained persons live, work, eat, study, and participate in activities within congregate environments, heightening the potential for SARS-CoV-2[9] to spread once introduced." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Center for Disease Control, July 22, 2020 (accessed September 2, 2020).[10]

A recent Inspector General's report on the situation at the facility states, "despite FCC Lompoc's efforts, its infrastructure may have limited its ability to implement the CDC's social distancing guidelines. FCC Lompoc has open bar cells (as opposed to solid doors), and inmates congregate in common areas, which can facilitate rapid community spread." Department of Justice Office of the Inspector General, *Pandemic Response Report July 2020, Remote*

---

[9] SARS-CoV-2 is the scientific name of the virus which causes the disease called COVID-19.

[10] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The court takes judicial notice of this CDC guidance.

*Inspection of Federal Correctional Complex Lompoc*, Report 20-086 (July 23, 2020) (accessed Sept. 2, 2020).[11]  The Inspector General's report states "unless the BOP promptly takes longer-term actions to address [staffing shortfalls], Lompoc will again face a shortage of medical and correctional staff when TDY[12] staff return to their home institutions." *Id.* at 2–3.  At bottom, even the government's measures designed to protect inmates at USP Lompoc cannot meaningfully mitigate their consistent proximity to one another, the most basic of risk factors in an infectious environment particularly when the source of infection is COVID-19.

Additionally, defendant's medical records support a finding that he suffers from medical conditions that substantially increase the risk he would suffer serious harm from contracting coronavirus.  As discussed above, defendant suffers from hypertension and hyperlipidemia, and the medical records he attaches to his motion, ECF No. 696–4, demonstrate a history of chronic hepatitis C, although his most recent records do not list hepatitis C in his list of active conditions.

Defendant also attaches articles showing hypertension was present as a comorbidity in approximately 50 percent of those infected who died in select non-prison populations.  *See* Jianfeng Xie, M.D., et al., *Clinical Characteristics of Patients Who Died of Coronavirus Disease 2019 in China*, JAMA Network Open (April 10, 2020)[13] (50% of COVID-19 deaths in Wuhan comorbid with hypertension in Wuhan in January 2020); Richard Franki, *Comorbidities the Rule in New York's COVID-19 Deaths*, THE HOSPITALIST (April 8, 2020)[14] (hypertension present in over 50% of COVID-19 deaths in New York state at time of publication).  The CDC has published information that older adults and those with underlying medical conditions, including a history of hepatitis C, might be at higher risk of severe illness

---

[11] https://oig.justice.gov/reports/remote-inspection-federal-correctional-complex-lompoc

[12] "Temporary duty."

[13] https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2764293. Case research letter.

[14] https://www.the-hospitalist.org/hospitalist/article/220457/coronavirus-updates/comorbidities-rule-new-yorks-covid-19-deaths. The Hospitalist is a medical digest produced by the Society of Hospital Medicine.

from COVID-19. *What to Know About Liver Disease and COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION (last visited May 29, 2020)[15] (noting "[c]urrently, we have no information about whether people with […] hepatitis C are at increased risk for getting COVID-19 or having severe COVID-19," but cautioning that currently available information suggests any serious underlying medical condition could increase risks). Nothing before the court allows it to draw conclusions about hyperlipidemia and whether it increases the risks associated with COVID-19.

Because hypertension is one of the most dangerous comorbidities for individuals who contract coronavirus, and because defendant has shown his risk of contracting coronavirus is not being mitigated effectively, the court finds extraordinary and compelling reasons to release him.

C. 18 U.S.C. § 3553(a) Sentencing Factors

The court must next consider the familiar sentencing factors of 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

1. Defendant's Prior Cannabis Felonies

Defendant asserts "if defendant were to be sentenced today for his federal charge of marijuana cultivation, the maximum sentence under USC 21 841(D) [sic] would be 5 years, not the 13 ½ year sentence he is now serving." Mot. at 3. Because his prior state marijuana felonies have been reduced to misdemeanors, he argues sentencing enhancements stemming from those priors would not apply. "Without sentencing enhancements, the maximum sentence for the marijuana charge is 'not more than five years[.]'" Def. Supp. Br. at 4, citing 21 U.S.C. § 841(b)(1)(D) (erroneously cited as 841(D)).

In this respect, defendant is incorrect. While 21 U.S.C. § 841(b)(1)(D) provides a sentence of "not more than five years," such a sentence is to be imposed for less than 50 kilograms of marijuana or fewer than 50 marijuana plants. Defendant was convicted for conspiracy to manufacture 100 or more marijuana plants. Conspiracy to commit a federal drug

---

[15] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html

11

offense is subject to the same penalties as the underlying offense. 21 U.S.C. § 846. Manufacture of 100 or more marijuana plants is punishable by "not less than 5 years and not more than 40 years[.]" 21 U.S.C. § 841(b)(1)(B)(vii); *see* Judgment & Commitment, ECF No. 565.

California voters decriminalized marijuana at the state level through the Control, Regulate, and Tax Adult Use of Marijuana Act ("Proposition 64") in 2016. California Health & Safety Code section 11359 now imposes a maximum sentence for possession of cannabis for sale of not more than six months in a county jail or a fine of not more than $500, or both. Cal. Health & Safety Code § 11359(b). The passage of Proposition 64 was not a legislative pardon; it did not automatically reduce the sentences of those already convicted. *People v. Lin*, 26 Cal. App. 5th Supp. 10, 19 (2018). Individuals seeking resentencing or dismissal of the initial felony possession conviction and sentence in light of the reduced penalties may petition the trial court of their conviction for such relief. Cal. Health & Safety Code § 11361.8(a) (2018). Here, defendant asserts he successfully petitioned to have his prior convictions for possession for sale reduced to misdemeanors, although he does not provide documentation or a date by which the reductions are effective. Mot. at 3.

Although defendant's sentence was the result of a plea bargain, the parties entered the plea agreement in consideration of defendant's exposure to significantly more liability if the government had filed a superseding indictment identifying his prior state marijuana cultivation felonies. Schweder Plea Agreement at 2–3, ECF No. 467. The court's statement of reasons in sentencing the defendant cites his criminal history of convictions resulting in his status as a felon. Stmt. of Reasons, ECF No. 566. Among these convictions are the two felony convictions for possession of marijuana for sale under California Health & Safety Code section 11359, which defendant represents have been reduced to misdemeanors. Def. Supp. Br. at 5 (citing Tehama County Case No. NCR50854 and El Dorado County Case No. S05CRF0369). Under the sentencing guideline for criminal history computation, felony convictions yielding a sentence of more than one year and one month in prison, as these did initially, are assigned a criminal history point value of three. U.S.S.G. 4A1.1(a). Misdemeanor convictions, on the other hand, are counted as two points. *See* U.S.S.G. § 4A1.1(a).

The government asserts defendant's reduction in sentence is immaterial here under the Ninth Circuit case of *United States v. Diaz*. Gov. Supp. Br. at 3–4 (citing *United States v. Diaz*, 838 F.3d 968 (9th Cir. 2016)). In *Diaz*, a criminal defendant convicted of federal drug trafficking felonies petitioned for a reduction in his life sentence imposed under 21 U.S.C. § 841's mandatory sentence enhancement for prior felonies. *Diaz*, 838 F.3d at 971. Following California's "realignment" under Proposition 47, the defendant could, and did, petition for reduction of a prior state drug felony to a misdemeanor. *Id.* The Ninth Circuit held for purposes of § 841's sentence enhancements, federal law ignores later state actions to reduce or expunge felonies that had "become final" before the defendant committed the federal offense. *Id.* at 975.

*Diaz* controls here. Defendant's prior marijuana cultivation felonies were final judgments that, accepting defendant's representations, have since attained a different status under state law. He was sentenced under a plea agreement that contemplated, in part, defendant's exposure to sentencing enhancements under § 841(b)(1)(A) for those prior felonies, which had become final. As *Diaz* instructs, the court must interpret federal sentencing law to ignore later alterations to defendant's final state felony convictions, in recognition of "the Supreme Court's repeated admonishments that federal laws should be construed to achieve national uniformity." *Id.* at 974 (citing *Dickerson v. New Banner Inst., Inc.*, 460 US. 103, 115 (1983)).

*Diaz* also noted that Congress "could, of course, give retroactive effect to changes in state law for purposes of federal statutes 'for policy reasons unrelated to innocence or an error of law.'" *Id.* (quoting *United States v. Law*, 528 F.3d 888, 911 (D.C. Cir. 2008) (per curiam)). Here, the most recent pronouncement of Congress is the relatively new framework of the First Step Act's amendment of § 3582(c). Congress, when directing courts to "consider[] the factors set forth in section 3553(a) to the extent they are applicable," did not expressly give retroactive effect to changes in state law for the purpose of determining past convictions. 18 U.S.C. § 3582(c)(1)(A).

In sum, defendant's argument based on the reduction of his state marijuana cultivation convictions to misdemeanors does not materially affect the analysis.

/////

2. <u>Additional Sentencing Factors</u>

"[T]he Court should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1696084, at *3 (citing U.S.S.G. § 1B1.13). Under the guidance of U.S.S.G. § 1B1.13, the court considers whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

Defendant's history of possession of firearms warrants careful consideration in the dangerousness analysis. Under the Bail Reform Act, defendant's conviction for being a felon in possession of a firearm is not a crime of violence that raises a presumption of danger to the community. *United States v. Twine*, 344 F.3d 987, 988 (9th Cir. 2003). Defendant's conviction here of felon in possession of a firearm arises from his possession of several automatic weapons at the rural property where he was engaged in the cultivation of marijuana. This is his third such felon in possession offense, although it is his first federal one. PSR at 12–13, ECF No. 535. As discussed during his sentencing hearing, the presence of these weapons at the marijuana grow "could have created a tinderbox given the number of firearms there." Sent. Tr. at 23:20–21, ECF No. 590.

At the same time, although he has possessed firearms illegally multiple times, defendant has never been convicted of using one in the commission of a crime. He was convicted of misdemeanor domestic violence, more than 25 years ago. PSR at 12. He has served all the time allocated to his sentence for being a felon in possession of a firearm, with the additional time remaining assignable to his marijuana conspiracy charge. If found in possession of a firearm during his period of supervised release, he risks the distinct possibility of revocation with return to prison notwithstanding his medical condition.

Defendant proposes to reside with Deborah Stuart, his "long-time girlfriend," a gainfully employed registered nurse in Valley Springs, California. Mot. at 20. Stuart has been a consistent advocate for him, has no criminal record, and represents she owns her own rural home suitable for self-quarantine and home detention. Stuart Decl. ¶¶ 3–6. Ms. Stuart's declaration was filed with the initial motion. At the court's request, the U.S. Probation Office had an officer

check with Ms. Stuart to assess her home to determine whether it is a suitable residence upon release.  At the time of Probation's visit, Ms. Stuart's home was for sale, and Ms. Stuart had only generalized plans for relocating following the sale, with no particular address in mind.  Additionally, Ms. Stuart advised Probation that her son, who is currently on county probation, resides with her.  While Probation has determined that Mr. Schweder apparently could reside in the same house with Ms. Stuart's son, based on current circumstances, the uncertainties accompanying the location of his proposed residence must be resolved before the court can grant release and be satisfied that concerns regarding dangerousness are overcome.

IV.   CONCLUSION

For the foregoing reasons, the court DENIES defendant's motion for release under 18 U.S.C. § 3582, without prejudice to refiling once details on the location where he proposes to reside can be clarified.

IT IS SO ORDERED.

DATED: September 3, 2020.

CHIEF UNITED STATES DISTRICT JUDGE